IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROLINA NINA BAUTISTA,** *Individually and as Parent and Natural Guardian of F.M., a Minor*, Plaintiff, | CIVIL ACTION |
| v. | |
| **TEMPLE UNIVERSITY HOSPITAL, INC., and TEMPLE UNIVERSITY HOSPIAL SYSTEM INC.,** Defendants and Third-Party Plaintiffs, | NO. 25-3101 |
| v. | |
| **CLINTON A. TURNER, M.D.,** Third-Party Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Carolina Nina Bautista ("Bautista") gave birth to her son ("F.M.") at Temple University Hospital. He was born premature—she was 28 weeks pregnant when she began experiencing intermittent contractions and went to the hospital. Tests showed an abnormal fetal heart rate and other signs of pre-term labor, but critical medical intervention was delayed for hours. The delay, according to a Complaint she filed against Defendants Temple University Hospital, Inc. and Temple University Health System, Inc. (together, the "Temple Defendants"), meant that F.M. was born with catastrophic brain injuries that will impair him for the rest of his life.

Bautista, proceeding individually and as the parent and natural guardian to F.M., sued the Temple Defendants in state court for professional negligence, corporate negligence, and negligent infliction of emotional distress ("NIED"). The Temple Defendants filed a Joinder

1

Complaint seeking indemnity and contribution against Third-Party Defendant Clinton A. Turner ("Turner"), the attending obstetrician who allegedly was responsible for Bautista's care during her time at Temple University Hospital.

The United States of America (the "United States" or the "Government") intervened and removed the matter to federal court, asserting that because Turner was employed by Delaware Valley Community Health, Inc. ("DVCH"), a covered employer under a federal public health service program, any claim against him arising from his care of Bautista belongs in federal court.

The Government now moves, pursuant to Federal Rule of Civil Procedure 21,[1] to dismiss Turner from the above-captioned action and substitute itself in his place as the sole Third-Party Defendant. Separately, Bautista moves to sever and remand her claims against the Temple Defendants from the Temple Defendants' third-party claims. For the reasons that follow, the Government's Motion shall be granted and Bautista's Motion shall be denied.

I.  BACKGROUND

On the morning of August 16, 2023, Bautista, then 20 years-old and 28 weeks into her first pregnancy, went to the emergency room at Temple University Hospital in Philadelphia after experiencing contractions which were approximately ten minutes apart. Nurses performed an initial exam and connected her to a fetal heart rate monitor. Over the next several hours, she continued to have contractions and demonstrated signs of pre-term labor. Meanwhile, her fetal heart tracings "reflected concerning findings, including fetal tachycardia and decelerations."

Despite those symptoms, the nurses attending to Bautista did not promptly call an

---

[1] In addition to Rule 21, the Government also purports to bring its Motion for Substitution pursuant to Rule 12(b)(1), which provides that a claim may be dismissed for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). However, aside from a passing argument that "the Court lacks subject-matter jurisdiction to adjudicate Temple's third-party claims as asserted against [Turner]," the Government does not explain why dismissal is appropriate under that Rule. For the reasons set forth more fulsomely below, Rule 21 provides complete and adequate relief in deciding the Government's Motion for Substitution, so the Court need not address the grounds for dismissal, if any, under Rule 12(b)(1).

obstetrician or maternal fetal medicine specialist to evaluate her.  Only after an approximately three hour wait in the emergency room was she finally admitted and transferred to the labor and delivery floor of the hospital.  About an hour and a half later, she was seen by two resident physicians and given an initial course of steroids and antibiotics.  She was also examined by an attending maternal fetal medicine physician.  Shortly thereafter, however, a nurse documented that Bautista's "membranes spontaneously ruptured."  Notwithstanding that observation, roughly three hours passed before a resident physician "returned to [her] bedside to evaluate her cervix."  During that evaluation, the physician began to suspect that Bautista was suffering from "chorioamnionitis"—a bacterial infection of the fetal membranes and amniotic fluid—and, as a result, recommended immediate delivery.

At 4:14pm—approximately nine hours after arriving at Temple University Hospital—Bautista delivered F.M., who suffered "catastrophic brain injuries" at birth.  Due to the "prolonged intrauterine hypoxia," he was "profoundly acidotic" upon delivery, and was eventually diagnosed with hydrocephalus.  Bautista avers that F.M.'s neurological injuries are permanent and "will disable him in every aspect of his life, for the rest of his life."  She maintains that "[h]ad F.M. been timely delivered, as the standard of care required, he would not have suffered the brain injuries he did, and he would not be in the neurologically devastated condition []he is today."  Further, as described in her Complaint, the entire ordeal put Bautista herself through "significant mental anguish" and "severe emotional distress."

## II.     MOTION TO SUBSTITUTE

### A.     Legal Standards

#### i.     *Rule 21*

Turning first to the Government's Motion to Substitute: Rule 21 "empowers courts to police the litigation's cast of characters."  *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 130

3

(3d Cir. 2022) (citations omitted). It provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Rule 21 can be exercised, among other reasons, to "preserve subject matter jurisdiction." *Avenatti*, 41 F.4th at 130 (citations omitted). "Significantly, because Rule 21 does not contain explicit standards governing the propriety of joinder or severance—that is, what constitutes 'just terms'—courts sometimes must incorporate standards to be found elsewhere in exercising their Rule 21 discretion." *Id.* at 131 (citations and internal quotation marks omitted). That said, Rule 21 authority, while discretionary, is not unlimited. *Id.* For instance, a district court "cannot drop indispensable parties, and it must assure itself that its actions will not prejudice any party." *Id.* (citations omitted).

### ii. *Federally Supported Health Centers Assistance Act*

Here, the Government's Rule 21 argument is that Turner was, at all relevant times, employed by DVCH—an entity the Government certifies has been "deemed" a federal employer under the Federally Supported Health Centers Assistance Act (the "FSHCAA"), 42 U.S.C. § 233—and thus, pursuant to that statute, "just terms" exist to substitute the United States in his stead as the proper party to defend against the Temple Defendants' third-party indemnity and contribution claims against him.

To understand the application of the FSHCAA, a brief foray into the relevant provisions of the Public Health Service Act (the "PHSA"), 42 U.S.C. § 233(a), and the Federal Tort Claims Act (the "FTCA"), *see* 28 U.S.C. §§ 1346, 2671-80, is necessary. The PHSA protects officers and employees of the Public Health Service (the "PHS") from personal liability "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" while acting within the scope of their employment. 42 U.S.C. § 233(a); *see*

4

*Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (holding that PHS officers and employees are "absolute[ly] immun[e] . . . for actions arising out of the performance of medical or related functions within the scope of their employment"). In lieu of personal liability, the PHSA makes available a tort action against the United States under the FTCA as the "exclusive" remedy for certain "act[s] or omission[s]" on the part of PHS employees resulting in personal injury or death. 42 U.S.C. § 233(a).

Under the FSHCAA, meanwhile, "public or non-profit private health centers receiving federal funds under 42 U.S.C. § 254b— as well as officers, board members, employees, and certain contractors of such entities—are eligible for the same PHSA and FTCA protections as are enjoyed by PHS employees." *O'Brien v. United States*, 56 F.4th 139, 147 (1st Cir. 2022) (citing 42 U.S.C. § 233(g)(1)(A)). Like the PHSA, "[t]he FSHCAA makes the FTCA the exclusive remedy for specified actions against members of the [PHS] . . . ." *Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132, 136 (2d Cir. 2024) (cleaned up); *see also* 42 U.S.C. §§ 233(a), (g)(1)(A). To gain this prophylaxis, a federally funded health center, or any employee associated with it, must be "deemed to be an employee" of the PHS by the Secretary of the United States Department of Health and Human Services ("HHS"). 42 U.S.C. § 233(g)(1)(A).

"[I]f an action is brought in state court against a 'deemed' PHS employee, the FSHCAA provides mechanisms both for removing the case to the federal district court and for substituting the United States as the named defendant in the 'deemed' employee's stead." *O'Brien*, 56 F.4th at 147. Of relevance here, one such mechanism directs that within fifteen days of being notified of such a case, the Government may appear in state court and "advise such court as to whether the [HHS] Secretary has determined" that the defendant "is deemed to be an employee of the [PHS] . . . with respect to the actions or omissions that are the subject of [the] civil action or

proceeding." 42 U.S.C. § 233(l)(1). If the Government does so, removal is required "at any time before trial . . . to the district court of the United States of the district and division embracing the place wherein it is pending . . . ." *Id*. § 233(c). At that point, the proceeding shall be considered "a tort action brought against the United States under the provisions of Title 28," meaning that the United States may move for substitution so that the case will proceed under the FTCA. *See id*. §§ 233(a), (c); *see also Thomas v. Phoebe Putney Health Sys.*, Inc., 972 F.3d 1195, 1198 (11th Cir. 2020) (outlining framework).

### B. Discussion

In support of its Motion to Substitute, the Government has certified that "Third-Party Defendant Clinton A. Turner, M.D. is a deemed and covered employee of the [PHS] who acted within the scope of that federal employment with respect to the actions and omissions that are the subject of the-above captioned action." It also appended a declaration from Frances M. Recio, a senior HHS attorney, who similarly certified that Dr. Turner, as a DVCH employee, was a "deemed" employee of the PHS who acted within the scope of his federal employment at the time of, and in any connection with, the incidents giving rise to Bautista's state law claims.[2]

Critically, though, health centers and their employees that are covered under the FSHCAA are only protected from suit under the FTCA (by operation of the FSHCAA) when they are "acting within the scope of [their] office or employment." 42 U.S.C. § 233(a); *see also Kelley*, 115 F.4th at 136; *Thomas*, 972 F.3d at 1197-98. "To determine whether the government employee was acting within the scope of his employment when he partook in the challenged conduct," the FTCA looks to the "relevant state law of *respondeat superior*." *Sharratt v.*

---

[2] Specifically, Recio explained that he "reviewed official [HHS] records and determined that [DVCH] was deemed eligible for [FTCA] malpractice coverage effective January 1, 2023, and its coverage has continued without interruption since that time." He also "reviewed the employment records submitted by [DVCH] on behalf of [Turner] and . . . determined that [he] was an employee of [DVCH] at all times relevant to the Plaintiff's complaint in this case."

*Murtha*, 437 F. App'x 167, 171-72 (3d Cir. 2011) (citing *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000)). To that end, Pennsylvania has adopted the Restatement (Second) of Agency, which considers conduct to be within the scope of employment if it (a) is the kind the employee is employed to perform; (b) occurs substantially within the time and space limits, and (c) is actuated, at least in part, by a purpose to serve the master. *Id.* (citing Restatement (Second) Agency § 228).

"Initially, when the Government or the defendant moves for substitution, the Attorney General's certification, although subject to judicial review, is *prima facie* evidence that the employee's challenged conduct was within the scope of employment." *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992); *see also Young v. Temple Univ. Hosp.*, 2019 WL 5569510, at *4 (E.D. Pa. Oct. 28, 2019) ("Certification by the United States Attorney General or United States Attorney 'is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment.'" (quoting *Melo v. Hafer*, 13 F.3d 736, 742 (3d Cir. 1994))). But that certification is rebuttable and subject to judicial review. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 435-36 (1995); *Schrob*, 967 F.2d at 936. To that end, "a plaintiff seeking to challenge [a] certification has the burden of coming forward with specific facts rebutting it." *Brown v. Mercadante*, 687 F. App'x 220, 222 n.6 (3d Cir. 2017) (citing *Schrob*, 967 F.2d at 936). In so doing, if a plaintiff demonstrates that there is a genuine issue of fact material to the scope of the employment question, the district court should permit limited discovery and conduct an evidentiary hearing. *See Schrob*, 967 F.2d at 936; *see also id.* (cautioning that, in such cases, "the district court should ensure that both the discovery and the hearing are circumscribed as narrowly as possible," while also recognizing that "these are matters within [the district court's] discretion"). Nevertheless, "[i]f the facts can be determined without an evidentiary hearing, the

7

court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits." *Id.*; *see also Lackro v. Kao*, 748 F. Supp.2d 445, 449-50 (E.D. Pa. 2010) ("The need for discovery following a certification of employment turns on whether the plaintiff challenging the U.S. Attorney's certification can proffer specific facts to rebut the certification.").

Against that backdrop, the Government's certifications, while not "conclusively resolv[ing] the question of substitution . . . constitute *prima facie* evidence" that the challenged conduct implicating Turner occurred within the scope of his federal employment. *Lackro*, 748 F. Supp.2d at 449-50 (citing *Schrob*, 967 F.2d at 936). In response, Bautista, who opposes the Government's Motion, points to four documents, which she claims rebut the Government's certification regarding the scope of Turner's employment. First, she notes that Turner has a profile on the Temple Defendants' website, where he is listed as one of its doctors. Second, she highlights Turner's application for staff privileges at Temple University Hospital, which notes his "primary affiliation" as Temple University Hospital. Attached to that application is a copy of Turner's resume, which, in her estimation, does not list or otherwise refer to DVCH. Next, she draws attention to the billing records associated with her care, which records purportedly identify the Temple Defendants as the billed provider and Turner as the attending physician. And finally, she notes that the consent form, which she was asked to sign at the time of her treatment, did not warn her that her care would be overseen by any DVCH providers.

As counterpoise, the Government attached two additional declarations in their Reply Brief. The first is from Turner himself, in which he attests, in relevant part, that: (1) his sole employer since October 2004 has been DVCH; (2) consistent with common obstetric practice around the nation, non-hospital-employee obstetricians are able to care for their patients at any

8

hospital after obtaining privileges; (3) in August 2023, he delivered babies of DVCH (and non-DVCH) patients at Temple University Hospital as an on-call DVCH "laborist/hospitalist"; and, (4) the Temple Defendants have never employed him or paid his salary.  The second declaration is from Brenda Robles Cooke, DVCH's Senior Vice President and Chief Administrative Officer, in which she similarly attests that: (1) Turner was a DVCH employee in 2023, and held the DVCH position of laborist/hospitalist; (2) in that role, he was responsible for providing "on-call" obstetrics coverage at Temple University Hospital for DVCH patients as well as other patients; (3) he was on-call at Temple University Hospital on August 16, 2023 when Bautista arrived at the emergency room; (4) DVCH billing records for Bautista include an entry for "obstetrical care" services that Dr. Turner provided to her at Temple University Hospital on August 16, 2023; (5) that entry is consistent with DVCH's practice of billing its patients for the "physician delivery fee" associated with delivering their babies at Temple University Hospital; and, (6) Dr. Turner's only compensation for the delivery services that he provided to DVCH patients at Temple University Hospital in 2023 was his DVCH salary.  Appended to Cooke's declaration was a notice from DVCH to Turner describing, in essence, that although he would be "rendering professional medical services" at certain hospitals in the Temple Health System in his role as a hospitalist, he would be nonetheless employed by DVCH.  That notice referenced a Memorandum of Understanding between the Temple Defendants and DVCH, which was also attached to Cooke's declaration, outlining a patient referral agreement between the entities.[3]

---

[3] The Temple Defendants, who do not oppose the Government's Motion, nevertheless enter the fray: Their view is that Bautista "selectively represented the facts" in her Response Brief in an attempt to manufacture various disputed issues of fact.  For instance, they point out that Bautista's reference to Turner's profile on Temple's website is "misleading," in that the screenshot she included in her Response Brief "conveniently omits" the bottom half of the webpage.  And critically, that portion of the webpage lists "Fairmount Primary Care Center"—a facility which the Temple Defendants submit is operated by DVCH—as Turner's office location.  Moreover, they assert that Bautista's argument regarding Turner's application for medical privileges similarly hides the ball in that her Response Brief fails to include the lines immediately below the "primary affiliation" section of the form where Turner lists his employer as DVCH and his primary office address as a DVCH facility.

9

In view of those facts, Bautista has failed to rebut the Government's certification that, at the time of the events giving rise to her lawsuit, Turner was a "deemed" employee under the FSCHAA who acted within the scope of his federal employment. As the declarations from Recio, Turner, and Cooke indicate, Turner has never received a paycheck from the Temple Defendants; his sole employer since October 2004 has been DVCH—an entity which the HHS Secretary has "deemed" a federal employer under the FSHCAA. Further, because Cooke avers that it is "common obstetric practice" for non-hospital-employee obstetricians (like Turner), to attend to patients at other local hospitals (such as Temple University Hospital) after obtaining privileges, it makes sense why Bautista's billing records included entries for obstetrical care provided to her by Turner at Temple University Hospital. Cooke further bolstered that conclusion by explaining that it was DVCH's practice to bill its patients for care provided by its doctors at Temple University Hospital.

Thus, under Pennsylvania law, which the FTCA consults to determine whether a government employee working in Pennsylvania was acting within the scope of his federal employment when he engaged in the challenged conduct, *see Sharratt*, 437 F. App'x at 171-72, the Court finds that Turner's treatment of Bautista was: (a) of the kind Turner was employed to perform for DVCH; (b) occurred substantially within the time and space limits of his employment with DVCH; and (c) was actuated, at least in part, by a purpose to serve DVCH.

To be sure, Bautista gestured at other documents—namely, Turner's profile on Temple's website and his application for medical privileges—to cast doubt on the scope of his employment and argue that Turner was affiliated with and treated patients at Temple University Hospital. However, those documents, when examined in context, indeed identify DVCH as his employer and office location.

In short, Bautista has failed to carry her burden of "coming forward with specific facts" to rebut the Government's certification by demonstrating the existence of a genuine issue of fact material to the scope of Turner's employment. *Brown*, 687 F. App'x at 222 n.6; *see also Schrob*, 967 F.2d at 936. In the absence of such facts, the Court concludes that "just terms" exist under Rule 21 to dismiss Turner from the action and substitute the United States in his place as the sole third-party defendant. *Cf. Avenatti*, 41 F.4th at 130-31. Accordingly, the Government's Motion shall be granted without the need for any limited discovery or an evidentiary hearing. *See Schrob*, 967 F.2d at 936 ("If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits."); *Lackro*, 748 F. Supp.2d at 449-50.

### III.     MOTION TO SEVER & REMAND

Turning next to Bautista's Motion, she contends that the Court should, pursuant to 28 U.S.C. § 1367(2), decline to exercise supplemental jurisdiction over her state law claims for negligence and NIED because they "substantially predominate" over the Temple Defendants' third-party claims for indemnity and contribution against the United States. And without supplemental jurisdiction, she asks the Court to sever her claims and remand them to the Philadelphia County Court of Common Pleas.

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(c)(2), meanwhile, allows courts to sever and remand any "claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute." In considering a motion to sever and remand claims, the burden of

demonstrating federal jurisdiction exists rests with the party asserting jurisdiction. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Further, Section 1441 "is to be strictly construed against removal and all doubts should be resolved in favor of remand." *Id.*

Here, all parties agree that the Court has jurisdiction to entertain the Temple Defendants' third-party claims against the United States because "the FTCA confers federal jurisdiction over cases in which the United States is a party," meaning that any claims brought against the United States under that statute "find an independent basis of federal jurisdiction." *Young*, 2019 WL 5569510, at *12 (citing 28 U.S.C. § 1346(b)); *see also Da Silva v. Temple Univ. Hosp., Inc.*, 506 F. Supp.3d 318, 327 (E.D. Pa. 2020) ("The Court has subject matter jurisdiction in the instant action because the Temple Defendants' [FTCA] claim against the United States provides an independent basis for the exercise of such jurisdiction."); *M.D.R. by Rivera v. Temple Univ. Hosp.*, 2022 WL 15173903, at *5 (E.D. Pa. Oct. 26, 2022) ("Delaware Valley Community Health, Inc. employed Dr. Turner who is deemed a United States Public Health Service employee for purposes of the Federally Supported Health Centers Assistance Act. Dr. Turner is covered by the Federal Tort Claims Act as a public health service employee affording us subject matter jurisdiction." (cleaned up)).

The parties disagree, however, as to whether the Court should exercise supplemental jurisdiction over Bautista's negligence and NIED claims. 28 U.S.C. § 1367(a) provides, in relevant part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." As the Supreme Court recently explained:

> [28 U.S.C. § 1367(a)] . . . takes as its starting point claims within a federal district court's original jurisdiction—because, say, they turn on federal law. It then confers authority on the court to decide certain "other" claims in the same suit, involving only state law. That added authority—the court's supplemental jurisdiction— extends to claims "so related to" the claims supporting original jurisdiction as to form "part of the same [constitutional] case." And that needed relationship, *Gibbs* explains, is one of fact: The federal court has supplemental jurisdiction over state-law claims sharing a "common nucleus of operative fact" with the federal-law ones.

*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) (quoting 28 U.S.C. § 1331; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-27 (1966); 28 U.S.C. § 1367) (alterations in original). Put differently, state law claims are part of the same "case or controversy," such that courts have supplemental jurisdiction to entertain them under § 1367(a), if those claims "derive from a common nucleus of operative fact" as the federal claims. *Pennsylvania by Shapiro v. Mariner Fin., LLC*, 711 F. Supp.3d 463, 487 (E.D. Pa. 2024) (citations omitted).

Applying that standard here, Bautista's negligence and NIED claims against the Temple Defendants indeed "shar[e] a common nucleus of operative fact" with the Temple Defendants' third-party claims against the United States in that all claims fundamentally stem from the care provided to Bautista by several physicians and nurses at Temple University Hospital on August 16, 2023. Therefore, the Court has supplemental jurisdiction to consider Bautista's state law claims.

Nonetheless, Bautista urges the Court to use its discretion and decline to entertain her state law claims since those claims, in her view, "substantially predominate" over the Temple Defendants' third-party claims. It is well-settled that the exercise of supplemental jurisdiction is "committed to the sound discretion of the District Court." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 n.18 (3d Cir. 2003). To that end, 28 U.S.C. § 1367(c), in pertinent part, states that: "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under

subsection (a) if: . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ." *Id.* "Generally, a district court will find substantial predomination 'where a state claim constitutes the real body of a case, to which the federal claim is only an appendage'—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *De Asencio*, 342 F.3d at 309 (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995)). That inquiry focuses on the "terms of proof," the "scope of the issues raised," and the "comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726-27; *see also De Asencio*, 342 F.3d at 309-12 ("Our inquiry here centers on the terms of proof and the scope of the issues raised . . . .").

However, as the plain text of the supplemental jurisdiction statute indicates, even if a claim substantially predominates, a court is not required to dismiss or remand the claims. *See* 28 U.S.C. § 1367(c) ("[D]istrict courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if: . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, . . . ." (emphasis added)). Rather, it is only "where the claim over which the district court has original jurisdiction is dismissed before trial" must the district court "decline to decide the pendent state claims." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citing *Borough of W. Mifflin*, 45 F.3d at 788). And even in such cases, "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for retaining jurisdiction. *Id.*; *cf. Royal Canin*, 604 U.S. at 40 (explaining that, historically, the exercise of jurisdiction over pendant state law claims was focused on the values of judicial economy, convenience, fairness, and comity); *Gibbs*, 383 U.S. at 726 (same).

Here, assuming without deciding that Bautista's state law claims substantially predominate over the Temple Defendants' third-party federal claims, "considerations of judicial economy, convenience, and fairness to the parties" nevertheless provide an "affirmative justification" for exercising supplemental jurisdiction. *Hedges*, 204 F.3d at 123; *see also Gibbs*, 383 U.S. at 726. Indeed, it makes little sense to require the Temple Defendants to engage in discovery and litigate common issues of fact and law across two separate fora when all such issues can be addressed efficiently (and consistently) in one action under this Court's supervision. Further, keeping Bautista's state law claims in federal court more adequately protects the Government's interests in this case—namely: (1) ensuring that it has the opportunity, where appropriate, to participate in discovery and pretrial proceedings, and; (2) minimizing any prejudice to Turner, who, although no longer a party to this case, may be deposed or called to testify at some point in the proceedings.

For the reasons set forth above the Motion to Sever and Remand shall be denied.

***

An appropriate order follows.

BY THE COURT:


S/ WENDY BEETLESTONE
_____
**WENDY BEETLESTONE, C.J.**