**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CAROLINA NINA BAUTISTA,** **Individually and as Parent and Natural Guardian of F.M., a Minor,** *Plaintiff,* v. **TEMPLE UNIVERSITY HOSPITAL INC., et al.,** *Defendants and Third-Party Plaintiffs,* v. **THE UNITED STATES OF AMERICA,** *Third-Party Defendant.* | **CIVIL ACTION** **No. 25-cv-3101** |

**ORDER**

    **AND NOW**, this     day of          , 2026, upon consideration of the United States of America's Motion (ECF 62) to dismiss Plaintiff's Federal Tort Claims Act (FTCA) claims and Plaintiff's opposition thereto, it is hereby **ORDERED** that the United States of America's Motion's is **DENIED**.

    The United States of America is hereby **ORDERED** to answer Plaintiff's Amended Complaint (ECF 61) within fourteen (14) days.

                       **BY THE COURT:**

                       _____

                       **WENDY BEETLESTONE, J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CAROLINA NINA BAUTISTA,**
**Individually and as Parent and Natural**
**Guardian of F.M., a Minor,**

*Plaintiff,*

v.

**TEMPLE UNIVERSITY HOSPITAL**
**INC., et al.,**

*Defendants and Third-Party*
*Plaintiffs,*

v.

**THE UNITED STATES OF AMERICA,**

*Third-Party Defendant.*

**CIVIL ACTION**

**No. 25-cv-3101**

### ALTERNATIVE ORDER

**AND NOW**, this      day of                , 2026, upon consideration of the United States of America's Motion (ECF 62) to dismiss Plaintiff's Federal Tort Claims Act (FTCA) claims and Plaintiff's opposition thereto, it is hereby **ORDERED** that the United States of America's Motion's is **GRANTED** only as to Plaintiff's FTCA claims against the United States.

**IT IS FURTHER ORDERED** that Plaintiff's claims against the Temple Defendants, including her corporate negligence claims, as pled in the original Complaint and amended in her Amended Complaint, are **NOT** dismissed and shall proceed.

**BY THE COURT:**

_____

**WENDY BEETLESTONE, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CAROLINA NINA BAUTISTA,** Individually and as Parent and Natural Guardian of F.M., a Minor, <br><br> *Plaintiff,* <br><br> v. <br><br> **TEMPLE UNIVERSITY HOSPITAL INC., et al.,** <br><br> *Defendants and Third-Party Plaintiffs,* <br><br> v. <br><br> **THE UNITED STATES OF AMERICA,** <br><br> *Third-Party Defendant* | **CIVIL ACTION** <br><br> **No. 25-cv-3101** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE UNITED STATES OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S FEDERAL TORT CLAIMS ACT CLAIMS**

Plaintiff, by and through her undersigned counsel, hereby responds in opposition to the United States of America's Motion to Dismiss Plaintiff's Federal Tort Claims Act ("FTCA") Claims and incorporates by reference the accompanying Memorandum of Law. The Motion should be denied for the reasons set forth therein. In the alternative, any dismissal must be limited to Plaintiff's FTCA claims against the United States. Plaintiff's amended claims against the Temple Defendants are independent and must proceed regardless of how the Court rules on the FTCA claims.

This Court granted Plaintiff leave to file an Amended Complaint, which asserted claims against the United States, already in the case through its substitution for Dr. Turner after the Temple Defendants' joinder, and refined Plaintiff's allegations regarding the negligent care provided to

Ms. Bautista and F.M. at Temple University Hospital. The Amended Complaint also further particularized Plaintiff's corporate negligence claim against the Temple Defendants, including their decision to credential and continue privileging Dr. Turner despite his extensive litigation history, most notably, Temple University Hospital's own prior lawsuit against him in which it retained experts who opined that he breached the standard of care and caused a neonatal brain injury.

Plaintiff did not assert any FTCA claim in her original Complaint and, before seeking leave to amend, fully exhausted her administrative remedies. Even if this Court were to dismiss Plaintiff's FTCA claims, any such dismissal must be strictly limited to those claims against the United States. Plaintiff's corporate negligence claims against the Temple Defendants were asserted in the original state court Complaint and remain independent, viable causes of action that are not subject to dismissal on FTCA grounds. Notably, the Temple Defendants have not challenged the sufficiency of these claims and instead answered the Amended Complaint.

Respectfully submitted,

**SALTZ MONGELUZZI BENDESKY, P.C.**

BY:    _/s/ Aidan B. Carickhoff_
ROBERT J. MONGELUZZI
AIDAN B. CARICKHOFF
OLIVIA S. SZUMSKI
*Attorneys for Plaintiff*

Dated: May 7, 2026

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CAROLINA NINA BAUTISTA,**<br>**Individually and as Parent and Natural**<br>**Guardian of F.M., a Minor,**<br><br>*Plaintiff,*<br><br>v.<br><br>**TEMPLE UNIVERSITY HOSPITAL**<br>**INC., et al.,**<br><br>*Defendants and Third-Party*<br>*Plaintiffs,*<br><br>v.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>*Third-Party Defendant.* | **CIVIL ACTION**<br><br>**No. 25-cv-3101** |

**PLAINTIFF'S  MEMORANDUM  IN OPPOSITION TO THE UNITED STATES OF
AMERICA'S MOTION TO DISMISS PLAINTIFF'S FEDERAL TORT CLAIMS ACT
CLAIMS**

Plaintiff, by and through her undersigned counsel, respectfully submits this Memorandum

of Law in Support of her Opposition to the United States of America's Motion to Dismiss

Plaintiff's Federal Tort Claim Act claims.

## I.      INTRODUCTION

Plaintiff filed her state court Complaint against the Temple Defendants on February 28,

2025, naming neither Dr. Turner nor the United States and asserting only state law claims for

professional negligence, negligent infliction of emotional distress, and corporate negligence. It

was the Temple Defendants who brought Dr. Turner into this case on April 23, 2025 by Joinder

Complaint. The United States then removed the case to this Court, substituted itself for Dr. Turner,

and, together with the Temple Defendants, opposed Plaintiff's effort to sever and remand her state

law claims. Plaintiff did not seek leave to amend until after taking Dr. Turner's February 4, 2026

1

deposition, at which point she had already exhausted her administrative remedies under 28 U.S.C. § 2675(a).

The United States' reliance on McNeil v. United States, 508 U.S. 106 (1993), is misplaced because it rests on a premise that Plaintiff prematurely filed an FTCA action. She did not. Rather, the federal posture of this case was created by the Temple Defendants' joinder and the United States' subsequent substitution and removal. The United States has had ample notice of the claims involving Dr. Turner. Plaintiff submitted her administrative tort claim on January 17, 2025. Thereafter, following the Temple Defendants' April 23, 2025 joinder of Dr. Turner, the United States removed this case to federal court on June 18, 2025 and has actively litigated it since, participating in written discovery and depositions, including Dr. Turner's deposition. Under these circumstances, the purposes of administrative exhaustion, notice, and an opportunity to investigate have been fully satisfied.

Even if this Court were to dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction or as time-barred, Plaintiff's amended corporate negligence claim against the Temple Defendants remains entirely unaffected. That claim was pled in the original state court Complaint, has been part of this case from its inception, and arises from the Temple Defendants' own conduct. It proceeds independently of any claim against the United States and cannot be dismissed on FTCA grounds.

## II.    <u>STATEMENT OF FACTS</u>

This medical malpractice action arises from the catastrophic birth injuries suffered by F.M. as a result of the negligence and recklessness of Temple University Hospital, Inc. and Temple University Health System, Inc. (the "Temple Defendants" or "Temple"). F.M. was born in August of 2023 at Temple University Hospital in a setting of profound fetal distress. The Temple

2

Defendants failed to properly manage Ms. Bautista's labor and did not timely deliver F.M., despite clear signs of fetal distress and the imminent risk of neurological harm. When F.M. was eventually delivered, it occurred after a prolonged period of non-reassuring fetal heart tracings and other clinical indications that should have prompted an urgent delivery well before F.M. deteriorated. By the time of his delayed delivery, F.M. had suffered profound asphyxiation and was in a near-death state. Throughout the course of care, the Temple Defendants knowingly and willfully ignored the escalating risks of failing to act promptly, disregarding the substantial danger of catastrophic injury. As a direct result of their grossly inadequate care, F.M. endured widespread, irreversible brain damage, which is permanent and will render him disabled in every aspect of his life, for the rest of his life.

## III.    **PROCEDURAL HISTORY**

Plaintiff filed her administrative tort claim with the Department of Health and Human Services ("HHS") on January 17, 2025. See ECF No. 10, Exhibit A thereto (Declaration of Frances M. Recio ¶ 4) and Exhibits "A" and "B" thereto (Plaintiff's administrative tort claim). Plaintiff's administrative claim named as potential defendants "Maria De Los Santos Health Center, Delaware Valley Community Health Inc. [DVCH], **United States of America, and All Actual and Ostensible Agents of Said Entities**." Id. (emphasis added). On July 11, 2025, HHS denied the administrative tort claim and mailed a denial letter to Plaintiff's counsel. Id. at ¶¶ 5-6 & Exhibit "C" thereto (denial letter).

On February 28, 2025, Plaintiff filed her birth-injury Complaint against the Temple Defendants in the Philadelphia County Court of Common Pleas. See ECF No. 15, Exhibit A thereto (Plaintiff's Complaint). Plaintiff's Complaint includes three (3) counts: professional negligence claim and negligent infliction of emotional distress ("NIED") claim against the Temple Defendants

and their agents and employees, and a corporate negligence claim against the Temple Defendants. Id. On April 23, 2025, in state court, the Temple Defendants filed a Joinder Complaint for contribution and indemnity claims against Dr. Clinton A. Turner, the attending obstetrician involved in F.M.'s labor at Temple University Hospital in August of 2023. See ECF No. 1, Exhibit B thereto (Joinder Complaint).

On June 18, 2025, the United States filed a Notice of Removal, asserting that, pursuant to 42 U.S.C. §§ 233(c) and 233(g), Third-Party Defendant Dr. Turner is deemed an employee of the U.S. Public Health Service through a federally funded health clinic: Delaware Valley Community Health Inc ("DVCH"). See ECF No. 1. On June 25, 2025, the United States filed its motion to be substituted for Third-Party Defendant Dr. Turner. See ECF No. 10.

On July 11, 2025, Plaintiff filed a motion to sever Plaintiff's state law tort claims from the Temple Defendants' contingent, third-party contribution and indemnity claims against the United States, and to remand Plaintiff's state law tort claims to the Philadelphia County Court of Common Pleas. See ECF No. 15. On August 28, 2025, the Court granted the United States' Motion to Substitute and denied Plaintiff's Motion to Sever and Remand. See ECF No. 32.

On February 4, 2026, Plaintiff took Dr. Turner's deposition. His testimony revealed, for the first time, that he recognized multiple signs of fetal distress and deterioration on F.M.'s fetal monitoring tracings, including fetal tachycardia, periods of minimal variability, and late decelerations while Ms. Bautista was under his care. See ECF 51, Exhibit B thereto at (Deposition of Dr. Turner at 14-103:18; 125:17-166:14; 173:4-174:5). He acknowledged that he had continuous access to and responsibility for reviewing the fetal monitoring strips throughout the labor course. Id. at 168:20-169:14; 172:9-14. Despite these findings, Dr. Turner did not initiate, or direct obstetrical interventions aimed at improving fetal status or expediting delivery. This included

4

failing to implement intrauterine resuscitative measures, failing to timely administer steroids and antibiotics in the hours following presentation, and failing to move toward operative delivery, including cesarean section, to remove F.M. from what Dr. Turner's testimony reflects was an increasingly compromised intrauterine environment.

Discovery further revealed that the Temple Defendants themselves previously sued Dr. Turner in federal court, retained and presented expert testimony establishing that he breached the applicable standard of care, and proved that his conduct caused a neonatal brain injury. Notwithstanding their own litigation against him and their own experts' opinions, the Temple Defendants continued to credential and re-privilege Dr. Turner – and continued to permit him to provide obstetrical care at Temple University Hospital, including the obstetrical care that injured F.M. Discovery also revealed that the Temple Defendants maintain a two-team obstetrical structure within the Labor and Delivery unit, dividing attending obstetricians by patient population, and that Dr. Turner has always been on the team that treats only patients who received prenatal care at federally funded clinics. Plaintiff was assigned to Dr. Turner's team rather than another attending obstetrician solely because she had received prenatal care at DVCH.

After Dr. Turner's February 4, 2026 deposition, on February 11, 2026, Plaintiff moved for leave to amend her Complaint to assert professional negligence and NIED claims against the United States and her existing claims against the Temple Defendants based on discovery revealing that the Temple Defendants had previously sued Dr. Turner in federal court, presented expert testimony establishing that he breached the standard of care, and proved that his conduct caused a neonatal brain injury, yet continued to credential and re-privilege him at Temple University Hospital. See ECF 51. By the date of that Motion, Dr. Turner, substituted by the United States, had

5

been a party to this litigation since the Temple Defendants' April 23, 2025 Joinder Complaint, had participated fully in written discovery, and had been deposed on February 4, 2026.

On March 31, 2026, this Court entered an Order permitting Plaintiff to file her proposed Amended Complaint. See ECF 60. On April 3, 2026, Plaintiff did so. See ECF 61. **In response to the Amended Complaint, the Temple Defendants filed an Answer**. See ECF 63. They did not move to dismiss any of the amended averments directed at them, raise failure to state a claim, or assert any other defense or objection to Plaintiff's Amended Complaint. Their Answer offers only general denials to Plaintiff's corporate negligence allegations, and the lone specific denial they make about Dr. Turner, with only one averment specifically denying "that Dr. Turner was an actual, apparent, or ostensible agent or employee," which is irrelevant to Plaintiff's corporate negligence claim. Id. at ¶¶ 165-184. The United States, by contrast, filed a Motion to Dismiss directed solely at Plaintiff's FTCA claims. See ECF 62.

## IV.    LEGAL ARGUMENT

### A.    Legal Standard

When deciding a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "may look only to the facts alleged in the complaint and its attachments." Fleming v. Kramont Employer Royce Realty, No. 02-2703, 2002 WL 1964257, at *1 (E.D. Pa. 2002) citing Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). A court "must accept as true all well pleaded allegations in the Complaint and view them in the light most favorable to the plaintiff." Fleming, supra, citing Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Such a motion to dismiss "will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff." Fleming, supra, citing Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

6

The United States has also sought dismissal based upon Rule 12(b)(l) of the Federal Rules of Civil Procedure, alleging lack of subject matter jurisdiction. Dismissal "is proper only when the claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial or frivolous." Cohen v. Temple Physicians, Inc., et al., 11 F.Supp.2d 733, 735 (E.D. Pa. 1998). It is "[o]nly if it appears to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction may the complaint be dismissed." Id. Therefore, a plaintiff must "have an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing in support of her jurisdiction contention." Id.

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991) citing Mortensen v. First Federal Sav. And Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); see also Development Fin. Corp. v. Alpha Housing & Health Care, 54 F.3d 156, 158 (3d Cir. 1995). However, plaintiff's burden is light; dismissal for lack of jurisdiction is only appropriate where the right claimed "is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Growth Horizons, Inc., v. Delaware Cty., Pa., 983 F.2d 1277, 1280-81 (3d Cir. 1993) (citations omitted).

### B.    Plaintiff's FTCA Claims Against the United States Were Not Prematurely Filed and Survive the United States' Motion to Dismiss

The United States' dismissal argument rests on an asserted premature filing of Plaintiff's Complaint prior to exhausting her administrative remedies under the FTCA as required under 28 U.S.C. § 2675(a), citing McNeil v. United States, 508 U.S. 106 (1993). The argument fails because it presupposes that Plaintiff initiated this lawsuit by filing an FTCA complaint. She did not. The Temple Defendants and the United States deliberately created and then defended the federal

7

posture of this case, insisting that even Plaintiff's state law claims remain in this Court, while Plaintiff sought to sever and remand them. See ECF No. 15.

In McNeil, the petitioner filed an FTCA complaint in federal court against the United States Public Health Service before ever presenting a claim to HHS. 508 U.S. at 108. Although he later submitted an administrative claim, the Supreme Court affirmed that the action was properly dismissed as premature because it was "commenced before satisfaction of the administrative exhaustion requirement under § 2675(a)." Id. at 109. Because the Government had no notice before suit was filed, the statutory purpose of § 2675(a)—to afford the agency "a fair opportunity to investigate and possibly settle the claim before the parties must assume the burden of costly and time-consuming litigation"—was defeated. Id. at 111-12. Likewise, in Wadhwa v. Nicholson, 367 F. App'x 322, 324-25 (3d Cir. 2010), dismissal was warranted where the appellants filed an FTCA complaint before receiving a final agency denial or waiting the required six months.

The United States relies on McNeil to argue that plaintiffs like Ms. Bautista, who file a complaint before exhausting administrative remedies, cannot cure a jurisdictionally defective action. The plaintiff in McNeil initiated an FTCA action prematurely. Plaintiff did not. She did not file any FTCA complaint, did not name Dr. Turner, and did not name the United States. She filed a state court complaint asserting only state law claims against the Temple Defendants. Thus, unlike in McNeil, Plaintiff did not prematurely file a complaint prior to exhausting administrative remedies because she did not initiate this action as an FTCA suit at all. By the time Plaintiff sought leave to amend and assert direct claims against the United States, the only point in this case at which she has ever done so, she had fully exhausted her administrative remedies.

Moreover, the purposes underlying McNeil have been fully satisfied. The United States has had notice of the claims since Plaintiff submitted her administrative tort claim on January 17, 2025,

and certainly no later than June 18, 2025, when it removed this case following the Temple Defendants' joinder of Dr. Turner. Since that time, the United States has actively litigated this matter, participating in discovery and depositions, including Dr. Turner's deposition. Accordingly, dismissal is not warranted under § 2675(a) or § 2401(b).

> **C.    Plaintiff's Corporate Negligence Claims Against the Temple Defendants Are Not FTCA Claims and Survive the United States' Motion to Dismiss**

Even if this Court were to grant the United States' Motion and dismiss Plaintiff's FTCA claims, Plaintiff's corporate negligence claim against the Temple Defendants for their selection, retention, credentialing, supervision of Dr. Turner, and their institutional policies and procedure indisputably survives. See ECF 61 at ¶¶165-184. That claim arises from the Temple Defendants' own conduct and is entirely independent of Dr. Turner's federal status or the timeliness of any FTCA claim. The United States' Motion is directed solely to FTCA claims against the United States. It does not, and cannot, reach Plaintiff's direct liability claims against the Temple Defendants.

"Pennsylvania recognizes the doctrine of corporate negligence as a basis for hospital liability separate from the liability of the practitioners who actually have rendered medical care to a patient." Rauch v. Mike-Mayer, 783 A.2d 815, 826 (Pa. Super. 2001) citing Whittington v. Episcopal Hospital, 768 A.2d 1144, 1149 (Pa. Super. 2001). In Thompson v. Nason Hospital, 591 A.2d 703 (Pa. 1991), the Supreme Court of Pennsylvania held that "[c]orporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." Id. at 707. The Supreme Court found four areas of duty owed by a hospital:

> (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

(2) **a duty to select and retain only competent physicians;**

(3) **a duty to oversee all persons who practice medicine within its walls as to patient care; and**

(4) **a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.**

Id. (citations omitted) (emphasis added).

The duty "runs directly from the hospital to the patient." Rauch, 783 A.2d at 827 citing Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997). Because of this, "an injured party need not rely on the negligence of a third-party, such as a doctor or nurse, to establish a cause of action for corporate negligence." Id. The claim "is based on the negligent acts of the institution itself" and "arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees." Id.

That is precisely what Plaintiff's original and amended claims pled here. Plaintiff alleges that the Temple Defendants are directly liable for their own institutional failures, including their decision to credential and continue privileging Dr. Turner despite their knowledge of his prior conduct, as well as their policies governing the provision of obstetrical care. Pennsylvania law recognizes negligent credentialing as a basis for corporate liability. See, e.g., Corrigan v. Methodist Hosp., 869 F. Supp. 1208, 1211 (E.D. Pa. 1994) ("credentialing doctors with knowledge of, or failure to learn of, their malpractice history could be negligent.").

This case presents far more than a failure to discover a physician's history. Here, the Temple Defendants possessed actual knowledge of Dr. Turner's prior negligence. They themselves sued Dr. Turner in federal court, retained experts who opined that he breached the standard of care, and proved that his conduct caused a neonatal brain injury. Notwithstanding that history, they

10

continued to credential and re-privilege him to provide obstetrical care at Temple University Hospital. including the care that injured F.M.[1]

> The presence of increased intracranial pressure noted in the neonatal course indicates a recent neurologic injury but cannot distinguish whether that injury was less than four hours old or occurred one to two days previously. Dr. Turner, in his discharge summary, indicated that delaying notification of Dr. Santiago regarding the decreased fetal movements increased the risk of subsequent problems. He had noted that bloody amniotic fluid raised concern for an acute placental abruption superimposed on a chronic abruption. He did not mention the significant interval of time that elapsed between his notification and assessment of Ms. Miller.
>
> experienced hypoxic and/or ischemic, quadriplegia, microcephaly, seizures, and other problems are the result of this hypoxic/ischemic damage. As Dr. Clinton Turner himself pointed out, delaying diagnosis and treatment increased the risk of injury. The three hours that elapsed between his notification and his assessment, therefore clearly increased the risk of more extensive neurologic injury from ongoing hypoxic/ischemic encephalopathy.
>
> These opinions are reached within a reasonable degree of medical certainty.
>
> Thank you for the opportunity to offer my opinion.
>
> Sincerely,
>
> Malcolm L. McHarg, M.D.

See Temple Defendants' June 29, 2016 Expert Report of Dr. Malcolm L. McHarg.

---

[1] This Court, following a telephone conference on February 17, 2026, ordered the Temple Defendants to produce the expert reports from their prior litigation involving Dr. Turner. During that same conference, the Court further advised that, in the event Plaintiff's Motion to Amend was granted, the Temple Defendants' credentialing files for Dr. Turner, specifically those covering the periods following the care at issue in *J.M., a minor, by his parents and natural guardians, Suzanne Miller and Bryan Monica v. Temple University*, PCCP Case No. 111203485 (care rendered in 2012), and *Temple University Hospital, Inc. v. United States of America*, E.D. Pa. No. 2:16-cv-01073-MAK (2017), would be discoverable. Despite the Court's clear guidance and repeated follow-up requests by Plaintiff, the Temple Defendants have failed to produce these credentialing materials.

Dr. Turner fell below the standard of care in the management of this patient. Decreased fetal movement is a possible warning sign of decreased oxygen delivery to the baby and acidosis. The initial monitor strip was consistent with hypoxemia, with late decelerations and minimal variability. The oxygen, hydration, and positioning did not improve the oxygenation of the baby. In the first hour, there were at least five late decelerations, indicating hypoxemia. In this circumstance, with decreased fetal movement and demonstrated hypoxemia, delivery is indicated by cesarean section, as this baby would not tolerate labor. A second violation of the Standard of Care by Dr. Turner occurred at 1510 when a biophysical profile was reported to him with a score of 2/8 for fluid only. This indicates a baby that has probable acidosis present, as was later confirmed at the time of delivery. Immediate delivery by C-section was indicated for this abnormal biophysical profile score, but the decision for delivery was not made until fifty minutes later at 1600, and then the baby was not delivered until 1631. The baby was acidotic, with a mixed respiratory and metabolic pattern.

It is my opinion that the acidosis that led to injury in this baby would have been prevented by delivery after the initial one hour of fetal monitoring with no improvement with oxygen and hydration. Thus, by 1:18 PM, a decision should be made to deliver by C-section and delivery accomplished by 1:48 PM. To a degree of medical certainty, the baby would not have been acidotic at that time and injury would have been avoided. It is also my opinion that, after the biophysical profile, immediate delivery would have saved forty minutes of progressive acidosis and would have decreased the risk of harm to the baby.

I hold these opinions to a reasonable degree of medical certainty. I will potentially modify my opinions as more information becomes available.

Thank you for asking me to review this matter.

Sincerely,

John P. Elliott, MD
Medical Director, Valley Perinatal Services
JPE:dj
Electronically signed by John P. Elliott, MD

See Temple Defendants' July 7, 2016 Expert Report of Dr. John P. Elliott.

12

was ever started or administered prior to delivery. Dr. Turner finally saw Ms. Miller at around 1600 hours, that is some 3 hours and 43 minutes after arrival to hospital and some 3 hours and 5 minutes after he was notified of the history of decreased fetal movements and the non-reassuring fetal heart rate record. His delays in not seeing the patient or making arrangements for the patient to be seen by a qualified colleague as soon as he was initially advised of the abnormal findings and then again advised of the continuation of the abnormal findings and the abnormal fetal biophysical profile score falls completely outside the standard of care. Further it is my opinion that had Dr. Turner complied with the standard of care and had personally seen Ms. Miller or arranged for a colleague to see Ms. Miller at the critical junctures and in particular at around 1255 hours, some or all of the adverse outcome sustained by this infant could have been prevented and avoided.

I hold theses opinions to a reasonable degree of medical certainty.

I am
Yours respectfully



Frank A. Manning M.D.

See Temple Defendants' July 7, 2016 Expert Report of Dr. John P. Elliott.

The Amended Complaint does not introduce a new corporate-negligence theory. It particularizes the Thompson duties Plaintiff has pled all along by aligning them with what discovery has now revealed the Temple Defendants: 1) knowingly credentialed and retained Dr. Turner despite their prior litigation establishing his negligent care and causation of neonatal brain injury; 2) permitted substandard care to occur under its supervision; and 3) maintained a two-team obstetrical system that assigned patients based on prenatal care source, resulting in Plaintiff being treated by Dr. Turner solely because she received care at a federally funded clinic. See ECF 60 at

13

¶¶ 168, 170–73, 147, 175(b); <u>see also</u> ECF 51, Exhibit B thereto at (Deposition of Dr. Turner at 14-103:18; 125:17-166:14; 173:4-174:5)

Plaintiff's amended allegations against the Temple Defendants are direct corporate negligence, not vicarious liability, and stand entirely independent of any FTCA claim. Tellingly, the Temple Defendants filed no motion to dismiss for failure to state a claim or any other defense to the sufficiency of the corporate negligence claim. Plaintiff's amended corporate negligence allegations therefore proceed regardless of how this Court rules on the United States' Motion.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should deny the United States of America's Motion to Dismiss. In the alternative, any dismissal must be limited solely to Plaintiff's FTCA claims against the United States. Plaintiff's corporate negligence claims against the Temple Defendants, asserted from the outset and further supported through discovery and bolstered by amendments to Plaintiff's Complaint, are independent, legally sufficient, and must be permitted to proceed.

<div style="margin-left: 40%">

Respectfully submitted,

**SALTZ MONGELUZZI BENDESKY, P.C.**

BY:    */s/ Aidan B. Carickhoff*
ROBERT J. MONGELUZZI
AIDAN B. CARICKHOFF
OLIVIA S. SZUMSKI
*Attorneys for Plaintiff*

</div>

Dated: May 7, 2026

<div style="text-align:center">14</div>

## CERTIFICATE OF SERVICE

I hereby certify that today, May 7, 2026, I served a true and correct copy of the foregoing

Plaintiff's Response in Opposition to Defendant United States of America's Motion to Dismiss,

with accompanying memorandum of law, by email upon:

Gerald B. Sullivan, Esq.
Assistant United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476
gerald.sullivan@usdoj.gov

Richard S. Margulies, Esq.
Samantha L. Conway, Esq.
Burns White LLC
1835 Market Street
Suite 2700
Philadelphia, PA 19103
rsmargulies@burnswhite.com
slconway@burnswhite.com

Andrew S. Kessler, Esq.
Cozen O'Connor
1650 Market Street, 28th Floor
Philadelphia, PA 19103
kessler@cozen.com

The memorandum of law has been filed electronically and are available for viewing and

downloading from the Court's Electronic Case Filing ("ECF") System.

A true and accurate courtesy copy, with accompanying memorandum of law, will be

delivered to the chambers of the Honorable Judge Wendy Beetlestone.

/s/ Aidan B. Carickhoff
*Attorney for Plaintiff*

15