### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROLINA NINA BAUTISTA,** **Individually and as parent and natural guardian of F.M., a minor,** Plaintiff, | **CIVIL ACTION** |
| v. | **NO. 25-cv-3101** |
| **TEMPLE UNIVERSITY HOSPITAL, INC. TEMPLE UNIVERSITY HOSPITAL SYSTEM, AND UNITED STATES OF AMERICA** Defendants. | |

### MEMORANDUM OPINION

This matter arises from injuries Plaintiff Carolina Nina Bautista ("Bautista") alleges on behalf of herself and her minor son, F.M., stemming from his delivery at Temple University Hospital. Bautista initially brought suit against Temple University Hospital, Inc. and Temple University Health System, Inc. (together, the "Temple Defendants") in the Philadelphia County Court of Common Pleas alleging several birth-injury torts claims, to which the Temple Defendants impleaded F.M.'s attending obstetrician, Dr. Clinton A. Turner, for indemnification and contribution. The United States then intervened by removing this matter to federal court and substituting itself for Dr. Turner. With the Court's leave, Bautista subsequently amended her complaint and asserted claims against the United States under the Federal Tort Claims Act ("FTCA") regarding Dr. Turner's conduct during F.M.'s delivery;[1] the Temple Defendants also

---

[1] When the United States' motion to substitute was granted, the only claims against Dr. Turner were the indemnification and contribution claims by the Temple Defendants. Bautista only sought to amend her complaint and state claims rooted in Dr. Turner's conduct after the United States was already substituted as the third-party defendant and Dr. Turner was no longer a party to this case. These were thus properly alleged in the Amended Complaint as FTCA claims against the United States, rather than Dr. Turner.

bring a cross-claim against the United States seeking indemnification and contribution.

The United States now moves to dismiss Bautista's FTCA claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The United States also brings a separate motion to dismiss the Temple Defendants' cross-claim. For the reasons that follow, the motion shall be granted to dismiss Bautista's FTCA claims—albeit without prejudice—and the motion to dismiss the Temple Defendants' cross-claim against the United States will be denied.

## I.   BACKGROUND

The circumstances precipitating this matter date back to F.M.'s birth at Temple University Hospital. On August 16, 2023, Bautista, then 28 weeks pregnant, presented to the hospital at 7:08 a.m. after experiencing "contractions approximately 10 minutes apart." She alleges that hospital personnel documented "concern for preterm labor" following an initial exam, yet failed to promptly consult an obstetrician or maternal fetal medicine specialist, interpret or document her baby's fetal heart rate, or provide "interventions or treatment for the patient's preterm labor." As part of this alleged negligence, Bautista asserts that her examining nurse did not save her findings "into the patient's electronic medical record for over [three] hours after the [exam] was allegedly performed"—an error Bautista contends to have delayed her "transfer[] into the labor and delivery floor" until two hours after the examining nurse first "made the plan for admission."

Upon being transferred, Bautista alleges her preterm labor was well underway and that "urgent consultation with an obstetrician or maternal fetal medicine specialist was required" in the face of "preterm labor, tachycardia, and decelerations." Bautista asserts that she was "finally seen *for the first time* by a physician . . . over [four] hours" after first presenting to the hospital, and that medical professionals "failed to provide Ms. Bautista with appropriate steroids and

antibiotics" for an additional thirty minutes.  By that point, providers had "documented that [Bautista]'s membranes [had] spontaneously ruptured" and that she was at risk of "chorioamnionitis"—a bacterial infection of the fetal membranes and amniotic fluid.  Bautista alleges these circumstances made expedited delivery essential in order "to remove [her] baby from an increasingly hostile uterine environment."  At 4:14 p.m., approximately nine hours after Bautista first arrived at Temple University Hospital, the baby was delivered.

F.M., the baby, is alleged to now "suffer[] from a catastrophic brain injury and global neurodevelopment deficits and delays."  Bautista alleges her son's "neurologic devastation" resulted directly from the "egregiously substandard care" by the Temple Defendants and the United States "in failing to properly manage [Bautista]'s labor and in failing to timely deliver F.M. in the face of signs and symptoms" suggestive of fetal distress and related injuries. Bautista avers that F.M.'s "neurological injuries are permanent and will disable him in every aspect of his life, for the rest of his life."  Likewise, Bautista alleges that she personally "experienced significant mental anguish, anxiety," and "severe emotional distress."

On January 17, 2025—approximately 17 months following F.M.'s birth—Bautista filed an administrative tort claim against non-party Delaware Valley Community Health Inc. ("DVCH").  Because DVCH is a federally funded clinic, Bautista filed her claim against them with the U.S. Department of Health and Human Services ("HHS").  HHS denied her claim on July 11, 2025.  On February 28, 2025, Bautista commenced this action against the Temple Defendants in the Philadelphia County Court of Common Pleas.  Shortly thereafter, the Temple Defendants impleaded Dr. Turner for contribution and indemnity as the attending obstetrician involved in F.M.'s delivery, and the United States subsequently removed this action and substituted itself for Dr. Turner after deeming him an employee of the U.S. Public Health

Service.  *See Bautista v. Temple U. Hospital, Inc.*, 2025 WL 2484257, at *1 (E.D. Pa. Aug. 28, 2025) (granting motion to substitute).  Approximately one year later—on April 3, 2026—Bautista amended her complaint to bring FTCA claims against the United States as the party substituted for Dr. Turner.

The United States has now filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  It argues that Bautista failed to fully exhaust those statutorily imposed administrative remedies that are a jurisdictional prerequisite to bringing an FTCA action before this Court.  *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . , unless the claimant shall have first [1] presented the claim to the appropriate Federal agency [2] and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.").[2]

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) enables a party to challenge a federal court's subject-matter jurisdiction over an action.  Fed. R. Civ. P. 12(b)(1).  Such motions must be granted when the court lacks "the statutory or constitutional power to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (cleaned up); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Unlike a motion to dismiss under Rule 12(b)(6), where "the defendant has the burden of showing no claim has been stated," a challenge to subject-matter jurisdiction under

---

[2] The United States alternatively moves to dismiss Bautista's FTCA claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a non-time-barred claim.  *See* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 2401(b) (FTCA timing restrictions).  As the United States' motion to dismiss for lack of subject-matter jurisdiction shall be granted, its alternative Rule 12(b)(6) motion need not be considered.  *See, e.g.*, *Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 293 (3d Cir. 2007) (declining to evaluate the merits of a party's claims because of dismissal for lack of subject-matter jurisdiction).

Rule 12(b)(1) puts the "burden of persuasion" on the plaintiff.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

A Rule 12(b)(1) motion may be presented as a facial attack or a factual attack on the claim at issue.  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)).  Where a facial attack "concerns an alleged pleading deficiency . . . , a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites."  *CNA*, 535 F.3d at 139 (citing *U.S. ex rel. Atkinson*, 473 F.3d at 514) (internal quotations omitted).  Whether a Rule 12(b)(1) motion consists of a facial or factual attack has "important procedural consequences."  *Id.*  Namely, while a facial attack commands the court to "look[] only at the allegations in the pleadings and do[] so in the light most favorable to the plaintiff," in a factual attack "it is permissible for a court to review evidence outside the pleadings."  *U.S. ex rel. Atkinson*, 473 F.3d at 514 (citations omitted).  Importantly, in a factual attack there is "no presumption of truthfulness attache[d] to the allegations of the plaintiff."  *CNA*, 535 F.3d at 139 (citations and internal quotations omitted).  For the reasons that follow, the United States' motion is a factual attack.

### III.    DISCUSSION

#### A.  FTCA Jurisdictional Prerequisites

The United States' motion to dismiss Bautista's FTCA claims under Rule 12(b)(1) turns on whether Bautista exhausted her administrative remedies for those claims prior to commencing this action.  Administrative exhaustion—via the process of "presentment"—is a jurisdictional prerequisite to bringing an FTCA suit in federal district court.[3]  *See McNeil v. United States*, 508

---

[3] Although the United States is generally immune from lawsuits seeking money damages, this immunity may be

U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) (citing *Rosario v. Am. Exp.-Isbrandtsen Lines, Inc.*, 531 F.2d 1227, 1231 (3d Cir. 1976)) (holding the exhaustion "requirement is jurisdictional and cannot be waived").  The FTCA's presentment procedure provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury . . . , unless the claimant shall have first [1] presented the claim to the appropriate Federal agency [2] and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a); *see also Shelton*, 775 F.3d at 569 ("No claim can be brought under the FTCA unless the plaintiff first presents the claims to the appropriate federal agency *and* the agency renders a final decision on the claim.").

Because a plaintiff's failure to exhaust administrative remedies deprives a federal court of its subject-matter jurisdiction, *see White-Squire v. USPS*, 592 F.3d 453, 456-58 (3d Cir. 2010), the United States' argument that Bautista did not satisfy the FTCA's presentment requirements is therefore a factual attack that "concerns the actual failure of [Bautista's] claims to comport factually with the jurisdictional prerequisites," *CNA*, 535 F.3d at 139 (defining a factual attack). *See also, e.g.*, *M.R. ex rel. Rivera v. Temple U. Health Sys., Inc.*, 2026 WL 196472, at *10 (E.D. Pa. Jan. 26, 2026) (holding the United States' Rule 12(b)(1) motion for failure to exhaust FTCA administrative remedies constituted a factual attack).

### B.  Administrative Exhaustion

Accordingly, before the Court is a factual dispute as to whether Bautista's January 17,

---

waived if the United States "does so unequivocally in a statute."  *Matsko v. United States*, 372 F.3d 556, 558 (3d Cir. 2004) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  The FTCA is one such statute and waives immunity for tort claims against the United States subject to certain limitations and exceptions, including the requirements of presentment and administrative exhaustion.  *See generally* 28 U.S.C. §§ 1346, 2671-80 (FTCA provisions).

2025, HHS administrative claim and its subsequent denial constituted administrative exhaustion. As a factual attack, the Court assesses whether Bautista indeed satisfied her presentment requirements without the presumption of her allegations' truthfulness, *see CNA*, 535 F.3d at 139, and with due consideration of any relevant evidence beyond the pleadings, *see U.S. ex rel. Atkinson*, 473 F.3d at 514 (citations omitted).

### i.    Scope of HHS Filing and FTCA Claims

For her part, Bautista alleges in the Amended Complaint that, "[o]n January 17, 2025, Plaintiff placed HHS on notice of a 'claim for damage, injury, or death' via Standard Form 95" and that, "[a]ccordingly, pursuant to 28 U.S.C. [Section] 2401(b), Plaintiff has exhausted her administrative remedies."  That may be so, as regards the *prenatal care* underlying Bautista's SF-95 filing, which submission reads in pertinent part as follows:[4]

> During Ms. Bautista's **prenatal care**, Defendants identified findings concerning for infection which Defendants knew or should have known were likely to cause premature labor . . . .  Despite these findings, Defendants failed to provide appropriate care and treatment to Ms. Bautista and her *in utero* baby [F.M.].  **As a result of Defendants' failure to provide appropriate prenatal and obstetrical care, Ms. Bautista present [sic] to Temple University Hospital** on August 16, 2023, in premature labor . . . and ultimately gave birth to [F.M.] in the setting of uterine infection and *in utero* fetal distress.

(emphasis added).  Although Temple University Hospital is mentioned in Bautista's SF-95 filing, it is included because Bautista went there "[a]s a result of [DVCH]'s failure to provide appropriate prenatal" care.  In other words, Bautista's HHS filing concerns the prenatal care that spurred, rather than included, the hospital care she received at Temple.  Indeed, Bautista

---

[4] The United States attaches Bautista's January 17, 2025, HHS filing as an exhibit to the Motion to Dismiss.  As a factual attack on Bautista's assertion of federal subject-matter jurisdiction, the Court may properly consider this filing as evidence pointing to whether Bautista adequately satisfied her FTCA claims' jurisdictional prerequisites. *See U.S. ex rel. Atkinson*, 473 F.3d at 514 (citations omitted) (providing that evidence outside of the pleadings may be considered in a factual attack under Rule 12(b)(1)).

acknowledged as such in a prior submission to the Court in which she characterized her "administrative tort claim [as] explicitly related to Plaintiff's <u>prenatal</u> care at <u>DVCH</u>."[5] (emphasis added). In that prior submission, she also asserted that she was not "attempting to make a claim against Dr. Turner" via her HHS filing.

By contrast, the FTCA claims raised in the Amended Complaint do not concern her prenatal care at all. Indeed, the subject of Bautista's prenatal care is not substantively referenced whatsoever in the Amended Complaint.[6] Instead, Bautista's FTCA claims—and, for that matter, all claims raised in this action—focus solely on Bautista's alleged *hospital care* injuries, *i.e.*, "Defendants' egregiously substandard care in failing to properly manage [Bautista]'s *labor* and in failing to *timely deliver* F.M." (emphasis added). As outlined in the Amended Complaint, this is a course of conduct that began "[o]n August 16, 2023, [when] Ms. Bautista presented to Temple Hospital."

### ii.   Minimal Notice of FTCA Claims

The United States asserts that the distinctions between the prenatal care injuries raised with HHS and the hospital care injuries in the Amended Complaint mean that Bautista has not met Section 2675(a)'s exhaustion requirements. To prevail on this argument, the United States

---

[5] In Bautista's opposition to the United States' motion to substitute, she explained: "Out of an abundance of caution, and before Plaintiff's state court complaint, **Plaintiff filed an administrative tort claim explicitly related to Plaintiff's prenatal care at DVCH**. . . . The tort claim does not say anything about care provided by Dr. Turner because Dr. Turner never saw Plaintiff at DVCH . . . . In the tort claim notice, Dr. Turner is listed as a potential witness, because his name appears in medical records at Temple Hospital. **The reference to Dr. Turner as a witness (1) does not mean Plaintiff made or is attempting to make a claim against Dr. Turner—she is not** . . . . Plaintiff has notified the United States multiple times that Plaintiff does not intend to proceed with the administrative claim and requests it be discontinued." (emphasis added).

[6] Bautista makes a single, passing reference in the Amended Complaint to her prenatal care: "At all relevant times, the Temple Defendants maintained and enforced a two-team obstetrical care structure within the Labor and Delivery unit, whereby attending obstetricians were divided into separate teams that treated different categories of patients based on *prenatal care* source, and Plaintiff was assigned to the team on which Dr. Turner served as the attending obstetrician because she received *prenatal care* at a federally funded clinic, rather than being treated by another attending obstetrician." (emphasis added).

must show that HHS did not receive adequate notice of any particular FTCA claims which are based on hospital conduct.  *See Freeman v. Lincalis*, 158 F.4th 166, 177 (3d Cir. 2025) (citing *Tucker v. USPS*, 676 F.2d 954, 959 (3d Cir. 1982)).  "To exhaust a claim under the FTCA, a plaintiff need only provide minimal notice which is sufficient to *enable the agency to investigate* their claim.  This is not a high bar."  *Id.* (internal quotations omitted).  Nevertheless, "a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts."  *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (citations and internal quotations omitted).

In *Roma*, the plaintiff submitted an FTCA administrative claim alleging that he was negligently instructed to remove his respirator while fighting a fire.  *Id.* at 358.  Yet in his federal court complaint, the plaintiff also alleged negligence in failing to *prevent* the fire.  *Id.* at 363. The Third Circuit held these claims sufficiently distinct as to render the latter not exhausted by the administrative remedies pursued regarding the former: "The facts concerning how the fire started and any negligence by federal employees in failing to prevent it are entirely distinct from the conduct involved in supervising the firefighting operations, including the . . . instruction to [Plaintiff] to remove his [respirator]."  *Id.*

Just as the Third Circuit found the agency in *Roma* only received notice "to investigate the way firefighting was handled by federal employees, [not] that it also had to engage in a much broader investigation" regarding the potentially negligent cause of the fire by other federal employees, *id.*, here Bautista only provided HHS with notice of injuries alleged during her prenatal care, not that it needed to investigate alleged negligence during Bautista's hospital care treatment.  The Amended Complaint alleges, for example, that despite "fetal heart tracings demonstrat[ing] concerning findings of fetal tachycardia, diminishing variability, and recurrent

decelerations," Temple University Hospital providers: (1) failed to "alert[] the physicians to the

concerning findings"; (2) did not "perform[] any intrauterine resuscitative measures to try and

improve [F.M.]'s fetal heart tracing"; and, (3) "failed to expedite delivery . . . to remove Ms.

Bautista's baby from an increasingly hostile uterine environment."  While an investigation into

Bautista's prenatal care necessarily includes some degree of inquiry into the circumstances

surrounding F.M.'s eventual delivery, these particular alleged deviations from the standard of

*hospital* care were not, given the content of Bautista's SF-95 form, within HHS's investigatory

ambit.  Simply put, Bautista's SF-95 did not put HHS on notice that it needed to investigate any

negligent conduct that transpired after she presented to Temple University Hospital.

Accordingly, Bautista failed to exhaust administrative remedies regarding her FTCA

claims.  Because this jurisdictional deficiency cannot be cured via amendment, dismissal is

warranted as any ensuing suit brought by Bautista after proper exhaustion would need to be

instituted as a new action.[7]  *See McNeil*, 508 U.S. at 112 ("Congress intended to require

complete exhaustion of Executive remedies before *invocation* of the judicial process.")

(emphasis added); *Wadhwa v. Nicholson*, 367 F. App'x 322, 325 n.5 (3d Cir. 2010) ("*McNeil*

clarified that administrative exhaustion must be complete *before* instituting suit, and that this

procedural rule is a requirement to which *all* litigants must adhere."  (citing *McNeil*, 508 U.S. at

113)).[8]

---

[7] The Court notes that it does not consider, because that question is not before it, the question of whether Bautista's unexhausted FTCA claims are time barred.  *See generally* 28 U.S.C. §§ 2401(b), 2679(d)(5) (FTCA time bar provisions).

[8] Dismissal for lack of subject-matter jurisdiction is ordinarily without prejudice as a court lacking jurisdiction is powerless to adjudicate the merits of a suit.  *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (citing *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim.  Ordinarily, such a dismissal is 'without prejudice.'")).  Although the United States argues "the FTCA claims should be dismissed with prejudice from this action under Rule 12(b)(1)," the thrust of its "with prejudice" argument is found solely within its alternative Rule 12(b)(6) motion. *See, e.g.*,

### C. Temple Defendants' Cross-Claim Against the United States

Turning now to the Temple Defendants' cross-claim against the United States, which the United States has moved to dismiss under Rules 12(b)(1), 13(g), and 14.  *See* Fed. R. Civ. P. 12(b)(1) (dismissal for lack of subject-matter jurisdiction); Fed. R. Civ. P. 13(g) (cross-claim); Fed. R. Civ. P. 14 (impleader).  But, in doing so they do not offer any law, cases, or authority regarding the legal ground for their argument, as required by the Local Rules of Civil Procedure of the Eastern District of Pennsylvania.  *See* E.D. Pa. R. Civ. P. 7.1(c) ("Every motion . . . shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion.").  "This Court has repeatedly reminded litigants that briefs not accompanied by citations to legal authority or adequate explanations of the bases for the party's arguments may be denied as being legally deficient."  *V.T. ex rel. M.E.T. v. N. Penn Sch. Dist.*, 2026 WL 1816215, at *4 n.5 (E.D. Pa. June 23, 2026) (citations and internal quotations omitted).

Here, "[i]nstead of submitting carefully developed legal arguments for the Court to examine as factfinder," *id.*, the United States supports its motion to dismiss the Temple Defendants' cross-claim only by passively "incorporat[ing] . . . by reference" its brief regarding Bautista's FTCA claims—an unrelated set of arguments that do not whatsoever address the issue of the cross-claim's dismissal.  Having failed to supply the Court with any arguments that might otherwise support granting its motion, the United States thus forfeits those positions.  *See United States v. Heatherly*, 985 F.3d 254, 270 (3d Cir. 2021) ("treating failure to "develop[] . . . arguments properly" as forfeiture); *see also Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir.

---

*Booker v. United States*, 2015 WL 3884813, at *5-8 (E.D. Pa. June 24, 2015) (granting dismissal of FTCA claims without prejudice despite government's Rule 12(b)(1) motion seeking dismissal with prejudice).

1997) ("[A]n argument consisting of no more than a conclusory assertion such as the one made here . . . will be deemed waived."). Therefore, the Temple Defendants' cross-claim is not dismissed and the United States separate motion will be denied.

An appropriate order follows.

**BY THE COURT:**


**S/ WENDY BEETLESTONE**
**WENDY BEETLESTONE, C.J.**